IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


WANDA JONES                                          PLAINTIFF

VS.                          CIVIL ACTION NO. 3:07–cv–513–WHB–LRA

TV MINORITY COMPANY,
NORFOLK SOUTHERN COMPANY, and
RON STOCK                                            DEFENDANTS


NORFOLK SOUTHERN COMPANY                    THIRD–PARTY PLAINTIFF

VS.

TV MINORITY COMPANY                         THIRD–PARTY DEFENDANT


<u>OPINION AND ORDER</u>

This cause is before the Court on the Motion of Defendants Norfolk Southern Company and Ron Stock for Summary Judgment on Plaintiff's claims.  The Court has considered the Motion, Response, rebuttal, surebuttal,[1] attachments to the pleadings, as well as supporting and opposing authorities and finds that the Motion is well taken and should be granted.


**I.  Factual Background and Procedural History**

Defendant, Norfolk Southern Railway Company ("Norfolk"), owns approximately twenty-six automobile facilities around the country,

---

[1]  Plaintiff filed a Motion seeking leave to file a surebuttal in further opposition to the Motion for Summary Judgment.  Finding that no prejudice will result, Plaintiff's motion will be granted.

including one in Meridian, Mississippi ("Meridian Facility"). At these facilities, newly manufactured automobiles are unloaded from Norfolk railcars, transferred to trucks, and delivered to dealerships. Defendant, TV Minority Company, Inc. ("TVM"), serves as an independent contractor for Norfolk and, in that capacity, oversees the unloading and transferring operations at the Meridian Facility. Allied Trucking, also an independent contractor for Norfolk, is responsible for delivering the automobiles.

Beginning in 2001, Plaintiff, Wanda Jones ("Jones"), was employed by TVM as its on-sight manager at the Meridian Facility. Jones reported daily to her supervisor Gary Locklear ("Locklear"), who is also a TVM employee. Locklear, who works out of offices in Michigan, made periodic visits to the Meridian Facility. Defendant, Ron Stock ("Stock"), who is employed as an operations manager by Norfolk, made monthly visits to the facility. Stock's visits generally lasted one or two days during which part of his work day was spent at the Meridian Facility.

Jones claims that Stock harassed her on the bases of gender and religion during his monthly visits. For example, Jones alleges that Stock made "snide and mocking comments about her religiosity" and instructed a "co-employee to put a Jesus stamp on a document if they wanted [her] to sign it." Jones also alleges that Stock once asked her what her husband had bought her from Victoria's Secrets for Christmas, once told her he was sleeping on the sofa because

his wife was mad at him, and once told employees at a Norfolk facility in Louisiana that she and the manager of Allied Trucking were in bed together.  Upon learning of the comment made to the Louisiana employees, Jones allegedly called Stock and Locklear and told them that she "would have to call the EEOC and contact a lawyer" to stop the harassment.

The initial conversation between Jones and Locklear was reportedly "heated".  Jones claims that following the conversation, Locklear drafted two letters reprimanding her for the tone and content of the conversation.  Jones further claims that both letters were sent to Stock so that he could decide which letter would be sent.  On or about March 22, 2007, Jones was issued a letter of reprimand/final warning by TMV, reprimanding her for the conversations she had had with Locklear and Stock.  According to the letter, Jones was reprimanded for using extreme profanity, threatening to shut down the Meridian Facility by walking off the job and taking the other employees with her, and acting unprofessionally during her conversation with Stock.  On April 1, 2007, Jones received a second letter informing her that she was being relieved of her duties at the Meridian Facility, and was barred from that facility under the contract between Norfolk and TVM.  By the same letter, TVM offered to either relocate Jones to another of its facilities, or accept her resignation.  Jones claims that she was constructively discharged after receiving the April 1, 2007, correspondence.

3

On April 8, 2007, Jones filed a Charge of Discrimination with the EEOC identifying TVM as her employer, and alleging a claim of retaliation.   Jones filed a second Charge of Discrimination on August 15 against Norfolk.   On August 29, 2007, purportedly after receiving right-to-sue Letters from the EEOC, Jones filed a lawsuit in this Court against TVM, Norfolk, and Stock, alleging claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000(e), *et seq.*, and a state law claim of tortious interference with employment contract.[2]  As Jones has alleged a claim arising under federal law, this Court may properly exercise subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.   Norfolk and Stock now move for summary judgment on Jones's claims.


## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).   The United States Supreme Court has held that

---

[2]   Jones's claims against TVM were dismissed through an Agreed Order of Dismissal entered on October 19, 2007.

this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes

by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial.  <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Legal Analysis

#### A.  Title VII Claims

Under title VII, an "employer" may not discriminate on the basis of race, color, religion, sex, or national origin.  <u>See</u> 42 U.S.C. § 2000e-2.  An "employer", for the purposes of Title VII, includes any "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks...."  <u>Id.</u> § 2000e(b).  Both Stock and Norfolk have moved for summary judgment on Jones's Title VII claims on the grounds that he/it was not her "employer" and, therefore, is not subject to liability under that statute.

In the case *sub judice*, the Complaint is silent as to whether Stock is being sued in his individual capacity or in his official capacity as a manager of Norfolk.  To the extent Stock is being sued in his official capacity, Jones's Title VII claims against him fail as a matter of law because she has also alleged a Title VII

6

claim against his employer Norfolk.   See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999) (holding that "a party may not maintain a suit against both an employer and its agent under Title VII.").   See also Harper v. City of Jackson Mun. Sch. Dist., 414 F. Supp. 2d 595, 608 (S.D. Miss. 2005) (finding that a plaintiff "is not entitled to maintain an action against both a corporation and its agent in an official capacity [in a Title VII action] because effectively the corporation could be held liable twice for the same act.") (quoting Indest 164 F.3d at 262).

To the extent Jones's Title VII claims are alleged against Stock in his individual capacity, the United States Court of Appeals for the Fifth Circuit has held that "[o]nly "employers," not individuals acting in their individual capacity who do not otherwise meet the definition of "employers," can be liable under Title VII."   Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir. 1994).   See also Harper, 414 F. Supp. 2d. at 608 (explaining that "it is 'settled Fifth Circuit law ... that employees may not be sued for damages in their individual capacities' because 'Congress' purpose in extending the definition of an employer to encompass an agent was simply to incorporate respondeat superior liability into Title VII.'") (quoting Indest 164 F.3d at 262).

Jones has not presented any evidence that Stock was her "employer" for Title VII purposes and, in fact, did not respond to Stock's Motion for Summary Judgment on her Title VII claims.   As

such, the Court finds that Jones has failed to show that there exists a genuine issue of material fact with regard to whether Stock could be considered her employer for Title VII purposes and, therefore, whether he could be held liable under that statute. Accordingly, the Court finds that Stock is entitled to summary judgment on Jones's Title VII claims.

Norfolk has likewise moved for summary judgment on Jones's Title VII claims on the grounds that it was not her employer. In response, Jones argues that Norfolk can be held liable under Title VII as a "joint employer." The Fifth Circuit has found that "[t]he existence of a joint employer relationship depends on the control which one employer exercises, or potentially exercises, over the labor relations policy of the other." North Am. Soccer League v. N.L.R.B., 613 F. 2d 1379, 1382 (5th Cir. 1980). As explained in Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1360 (11th Cir. 1994):

> The basis of the finding [of a joint employer relationship] is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

See also AT&T v. N.L.R.B., 67 F. 3d 446, 451 (2d Cir. 1995) (finding that "an essential element under any determination of

joint employer status in a subcontractor context is ... sufficient evidence of immediate control over the employees.") (quoting Clinton's Ditch Coop. Co. v. N.L.R.B., 778 F. 2d 132, 138 (2d Cir. 1985), cert. denied 479 U.S. 814 (1986)). When considering whether a joint employer relationship exists, the Court considers whether the "the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process. Id.

In the case *sub judice*, there is no evidence that Norfolk hired, or was involved with the hiring, of any TVM employee. There is no evidence that Norfolk maintained records of hours, handled the payroll, or provided insurance for TVM employees; directly supervised TVM employees; or participated in any collective bargaining processes. See e.g. Mot. for Summ. J. [Docket No. 60], Ex. G (Stock Aff.), Attachment (Agreement between TVM and Norfolk) at ¶ 2 (providing: "[TVM] shall be solely responsible for, and [Norfolk] shall not participate in, the employing or supervising of each person engaged in discharging [TVM's] responsibility under this Agreement; all such persons shall be the sole ... employees of [TVM]. [TVM] will pay all expenses and charges involved or incurred in any way in the performance of its obligations under this Agreement, including without limitation compensation of

personnel, fringe benefits, Social Security; [and] Workmen's Compensation unemployment insurance (as may be required by State or Federal law)...").[3]  The Court additionally finds that there is no evidence that Norfolk "directly administered any disciplinary procedures" taken with regard to TMV employees.  Although Jones argues that "when her supervisor wanted to reprimand her, he sent a draft to Norfolk for its review and approval", <u>see</u> Mem. in Supp. of Resp. [Docket No. 65], at 5, the deposition testimony she cites does not support this allegation.  <u>See id.</u> (citing Locklear Dep. at 33).  Specifically, in his deposition, Locklear testified that he did not recall whether Stock had either requested or received a draft copy of the reprimand letter that was sent to Jones prior to the date on which it was sent by TMV.  <u>See</u> Mot. for Summ. J., Ex. D (Locklear Dep.), at 33.  Locklear also testified that it was his idea to reprimand Jones on March 22, 2007.  <u>Id.</u>, Ex. D (Locklear Dep.), at 30.  Finally, on the issue of whether Norfolk retained control over firing TVM employees, the record shows that it did reserve for itself:

> [T]he right to bar from the Terminal or other [Norfolk]

---

[3]   <u>See also</u> <u>See</u> Mot. for Summ. J., Ex. E (Davis Dep.), at 30-32 (testifying that Jones was not a member of the union with which Norfolk employees were affiliated, and that Norfolk did not, with regard to any TVM employee: (1) determine employment benefit packages; (2) compensate or determine the pay rate; (3) withhold taxes; (4) provide workers' compensation benefits or other insurance; (5) make any determination or require consultation regarding hiring, firing, promotion or demotion; (6) set the work schedule; or (7) maintain personnel files.

property any of [TVM's] Workers who, in [Norfolk's] sole
judgment, could create any risk or operating or
administrative problems either because of the excluded
person's refusal to comply with operating safety
procedures, questions about his or her honesty,
discipline problems he or she creates with [Norfolk's]
own employees, or any other reason [Norfolk] has for
reasonably believing that the person might cause risk or
disruption to [Norfolk's] operations. Upon request by
[Norfolk], [TVM] will exclude from the performance of any
work under this Agreement, and bar from the Terminal or
other [Norfolk] property any of [TVM's] Workers
designated by [Norfolk] as excluded under this Agreement.
[Norfolk] shall not be required to specify, in any such
request or otherwise, either the basis for its decision
or which of the foregoing objections it has to the
excluded person.

See Mot. for Summ. J. [Docket No. 60], Ex. G (Stock Aff.),

Attachment (Agreement between TVM and Norfolk), at ¶ 5.  The Court

finds that while the Agreement between TVM and Norfolk permitted

the latter to bar TVM employees from its property and preclude them

from providing employment services for the reasons therein stated,

it does not show that Norfolk reserved for itself the general right

to fire TVM employees.

Based on the evidence before it, the Court finds that Jones

has failed to establish a genuine issue of material fact with

regard to whether Norfolk "retained for itself sufficient control

of the terms and conditions of employment of [TVM] employees" such

that it should be considered a joint employer.  See e.g. North Am.

Soccer League v. N.L.R.B., 613 F. 2d at 1382 (finding that a joint

employer relationship existed in a case in which the "degree of

control over essential aspects of ... labor relations" was

11

supported by evidence that the alleged joint employer exercised control over the "selection, retention, and termination of the players, the terms of individual player contracts, dispute resolution and player discipline"). See also Virgo, 30 F.3d at 1360-61 (finding a joint employer relationship existed in a case in which the alleged joint employer contractually stated that all employees were in its employ, and reserved for itself the right to (1) pay all costs of operations including employee compensation, (2) approve the salaries of all employees, (3) require that it be consulted regarding "the number and categories of supervisory and executive employees to be appointed, and the terms and conditions of such appointment", (4) allow the issuance work permits and employment passes only with its consent, and (5) have "final authority and responsibility over any labor negotiations respecting employees."); Ref-Chem Co. v. N.L.R.B., 418 F.2d 127, 129 (5th Cir. 1969) (finding there was substantial evidence to justify the conclusion that a joint employer relationship existed in a case in which the alleged joint employer contractually had the "right to approve employees, control the number of employees, have an employee removed, inspect and approve work, pass on changes in pay and overtime allowed."). Accordingly, the Court finds that Jones has failed to establish a genuine issue of material fact with regard to whether Norfolk was her employer for the purpose of imposing liability under Title VII and, therefore, that Norfolk is

entitled to summary judgment on her Title VII claims.


**B.  State Law Claim: Tortious Interference with Contract**

Under Mississippi law:

> A cause of action for tortious interference with a
> contract generally will lie against one who maliciously
> interferes with a valid and enforceable contract.
> Collins v. Collins, 625 So. 2d 786, 790 (Miss. 1993). In
> Shaw v. Burchfield, 481 So. 2d 247 (Miss. 1985), this
> Court held that our law recognizes a right of recovery
> for one whose contractual relationship has been
> tortiously interfered with, finding that "[o]ne who
> intentionally and improperly interferes with the
> performance of a contract between another and a third
> person by inducing or otherwise causing the third person
> not to perform the contract, is subject to liability to
> the other for pecuniary loss resulting to the other from
> the failure of the third person to perform the contract."
> Id. at 254-55.

Levens v. Campbell, 733 So. 2d 753, 759-60 (Miss. 1999). To

establish a claim for tortious interference with a contract, the

plaintiff must prove "(1) the acts were intentional and willful;

(2) that they were calculated to cause damages to the plaintiffs in

their lawful business; (3) that they were done with the unlawful

purpose of causing damage and loss, without right or justifiable

cause on the part of the defendant; and (4)that actual loss

occurred." Id. at 760-61 (citations omitted). The plaintiff must

also prove that the contract would have been performed but for the

alleged interference. Id. at 761 (citing Par Indus., Inc. v.

Target Container Co., 708 So. 2d 44, 48 (Miss. 1998)).

In her Complaint, Jones alleges that Stock and Norfolk wrongfully interfered with her employment contract by barring her from the Facility. <u>See</u> Compl., at ¶ 22. <u>See also</u> Mem. in Supp. of Resp. [Docket No. 65], at 14 ("The plaintiff has shown evidence the defendant banned her from the property knowing that it would have an economic impact on her in some fashion.").

The record shows that Norfolk was the owner of the Meridian Facility at which Jones was employed. <u>See</u> Mot. for Sum. J., Ex. G (Stock Aff.), at ¶ 4. The relevancy of property ownership to an intentional interference claim was discussed by the Mississippi Supreme Court in <u>Biglane v. Under The Hill Corp.</u>, 949 So. 2d 9 (Miss. 2007).[4] In <u>Biglane</u>, the court found:

> Ownership of the property is important because it speaks to the third factor of the tort – that the allegedly tortious acts must be performed without right or justifiable cause. It is a basic tenet of property law that a landowner or tenant may use the premises they control in whatever fashion they desire, so long as the law is obeyed.

<u>Id.</u> at 16. Thus, "[g]enerally speaking, it cannot be malicious for a person to refuse access to others to their private property."

---

[4] Although the state law claim in <u>Biglane</u> was one of tortious interference with a business relationship, the elements for that tort and tortious interference with contract are identical. <u>See</u> <u>Biglane</u>, 949 So. 2d at 16 (identifying the four elements necessary to prove a claim of tortious interference with a business relationship as: "(1) The acts were intentional and willful; (2) The acts were calculated to cause damage to the plaintiffs in their lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); (4) Actual damage and loss resulted.").

Id.  Based on the foregoing precedent and evidence, the Court finds that Jones has failed to show that there exists a genuine issue of material fact with regard to whether the decision to ban her from the Meridian Facility was done without right or justifiable cause, and therefore has failed to show that there exists a genuine issue of material fact with regard to the third element necessary to maintain a viable tortious interference with contract claim. Accordingly, the Court finds that summary judgment on this claim should be granted.

**D.   Third-Party Complaint**

On November 1, 2007, Norfolk filed a Third-Party Complaint against TVM seeking contractual and common law indemnity "for any and all sums that may be adjudged against [Norfolk] in favor of [Jones]."  On February 13, 2008, the Court entered an Order that, _inter alia_, stayed proceedings on the Third-Party Complaint pending resolution of Jones's claims against Norfolk.  See Order [Docket No. 28].  The Court finds, based on the summary judgment entered in favor of Norfolk on Jones's claims, that the relief requested through the Third-Party Complaint is moot and that the Third-Party Complaint should be dismissed.  Accordingly, the Court, on its own motion, will dismiss the Third-Party Complaint.

**IV.   Conclusion**

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Plaintiff's Motion to File

15

Surebuttal [Docket No. 68] is hereby granted.

IT IS FURTHER ORDERED that the Motion of Defendants for Summary Judgment [Docket No. 60] is hereby granted.

IT IS FURTHER ORDERED that the Motion of Defendants in limine [Docket No. 69] is hereby dismissed as moot.

IT IS FURTHER ORDERED that a Final Judgment dismissing both Plaintiff's Complaint and the Third-Party Complaint shall be entered this day.

SO ORDERED this the 11th day of September, 2008.

                             s/William H. Barbour, Jr.
                             UNITED STATES DISTRICT JUDGE